**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 13, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

BRANDY MERIE KELLER,

    Defendant-Appellant.

No. 09-1389
(D.Ct. No. 1:07-CR-00496-JLK-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BARRETT**, **ANDERSON**, and **BRORBY**, Senior Circuit Judges.

---

    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

    Defendant-Appellant Brandy Merie Keller appeals her sentence following

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

revocation of her supervised release. She asserts the district court abused its discretion in imposing a variant sentence above the advisory United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range, resulting in a substantively unreasonable twenty-four-month sentence. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Ms. Keller's twenty-four-month term of imprisonment following revocation of her supervised release.

## I. Procedural Background

According to the uncontested "Supervised Release Violation Report" prepared by a federal probation officer, Ms. Keller pled guilty in 2005 in the federal court, district of Oregon, to making a false material declaration to a federal grand jury in violation of 18 U.S.C. § 1623; she received a sentence of twelve months and one day imprisonment and three years supervised release. Ms. Keller's term of supervised release began on July 7, 2006, and, thereafter, in December 2007, jurisdiction over her and her supervised release transferred to the federal court in Colorado, where she resumed her residency. Besides standard conditions concerning supervised release, such as not committing any federal or state crime, the special conditions of her release required her: (1) cooperation in collection of DNA; (2) employment subject to approval by a probation officer; (3) residence and participation in an inpatient drug treatment program for a period

not to exceed ninety days; (4) use of psychotropic medication; and (5) participation in other substance abuse treatment, including submission to not more than eight drug tests each month.

In July 2006, after her release from prison, the probation office referred Ms. Keller to a mental health center in Grand Junction, Colorado, for substance abuse treatment, where she participated in individual and group substance abuse treatment through August 2007. During the early portion of her supervised release, Ms. Keller lived with her mother and then-four-year-old son in Clifton, Colorado.

In August 2006, she obtained employment as a cook at a restaurant in Grand Junction but for undisclosed reasons was fired in May 2007. In June 2007, Ms. Keller began working for a catering company in Grand Junction. On September 10, 2007, Ms. Keller violated the terms of her supervised release by possessing and using a controlled substance, specifically cocaine, and was again referred to the mental health center in Grand Junction for group substance abuse treatment. A month later, in October 2007, the conditions of her supervised release were modified so that the special condition she participate in inpatient drug treatment was removed and a special condition she reside in a residential reentry center for a period of up to 180 days was added. In October 2007 she also

enrolled at a technical school to become an auto mechanic, where she maintained, at least for a year, an A average and completed the program in February 2009. During this time, she continued to work at the same catering business with which she began employment in June 2007.

In January 2008, her treatment at the mental health treatment center was modified to include individual treatment to address family issues, which she completed in May 2008. In July 2008, Ms. Keller and her son moved in with friends for a month until they moved into their own apartment in Clifton in August 2008.

Starting in late 2008, Ms. Keller's violations of her supervised release escalated. On November 17, 2008, Ms. Keller violated the terms of her supervised release by possessing and using a controlled substance, specifically marijuana, and was again referred to a mental health center in Grand Junction for group substance abuse treatment. In addition, prior to March 2009, Ms. Keller was arrested and charged in three state cases for: (1) driving under restraint, driving under the influence of alcohol, and failure to yield the right of way; (2) driving under restraint–alcohol related and defective vehicle; and (3) a felony charge of vehicle eluding, second-degree aggravated motor vehicle theft, obstructing a peace officer, resisting arrest, failure to obey a traffic control

device, failure to signal for a turn, and reckless driving.[1] As a result, in March 2009, her treatment was again modified to increase her group substance abuse counseling. In May 2009, treatment was once again modified to increase counseling in response to family issues. Also, from January 29, 2009, through June 2, 2009, Ms. Keller failed to participate in her treatment program eight times – each in violation of the conditions of her supervised release. In addition, on April 24, 2009, she tested positive again for marijuana, which she denied using. On June 3, 2009, her substance abuse treatment was terminated based on both her eight unexcused absences from substance abuse treatment and her denial of using marijuana.

On June 24, 2009, a warrant issued charging Ms. Keller with the following five violations of her supervised release: (1) possession and use of cocaine on September 10, 2007; (2) possession and use of marijuana on November 17, 2008; (3) possession and use of marijuana on April 24, 2009; (4) failure on eight occasions, from January 29, 2009, to June 2, 2009, to participate in her drug treatment program; and (5) failure to submit written reports in March, April, and May 2009. In addition to the foregoing, a non-extraditable warrant issued for Ms. Keller in Oregon for nonpayment of court costs.

---

[1] While the first two of these cases were set for jury trial in December 2009, and the last one was set for jury trial in October 2009, neither party has advised this court of the disposition of those cases.

Following Ms. Keller's arrest on July 27, 2009, she waived her right to both preliminary and detention hearings; thereafter, the probation officer prepared the "Supervised Release Violation Report," calculating her Guidelines range at four to ten months imprisonment and supervised release at two to three years. In addition, the probation officer noted Ms. Keller could not receive a sentence over two years imprisonment, under 18 U.S.C. § 3583(e)(3), because the underlying offense was a Class D felony, and, further, she could not receive a term of supervised release of more than three years because the statutory maximum supervised release of three years was imposed at sentencing. Following these calculations, the probation officer made the following observations and recommendations:

> The defendant has been on supervision for three years. During that time, she has had three positive urine screens for cocaine and marijuana. She participated and completed substance abuse treatment twice and yet continued to use drugs. The third course of treatment was terminated due to unexcused absences and her denial regarding the use of marijuana. The defendant failed to pay court costs for her Oregon state probation and a nonextraditable warrant has been issued. She has two traffic cases and a felony case pending in Mesa County, Colorado, for alleged law violations.
>
> During her time on supervision, the defendant had maintained employment and completed the automotive course through IntelliTec College. She was the sole provider for her son and her residence was stable.
>
> The defendant has shown through various aspects of her life that she can be a productive hard worker and provide for her son. In other aspects, she shows a disregard for the law and lacks responsibility. A sentence to time served will impress upon the defendant the

seriousness of supervision and the negative impact of drug use. This sentence is below the guidleine [sic] range and felt appropriate because the use of drugs was spread out over a three year time period, the success she had in college, and that she had maintained employment. Also, she is likely to receive a significant sentence on her state case[s] due to her prior record. The defendant is a marginal candidate for supervision and treatment given her continuing drug use and new law violations.

R., Vol. 3 at R-1.

At Ms. Keller's revocation hearing, government counsel noted he had read the "Supervised Release Violation Report" and had "nothing to add." Ms. Keller's counsel did not object to the report and, instead, asked the court to follow the probation officer's recommendation of a sentence of time served of thirty-one days, based on the fact Ms. Keller did well in school and maintained employment and wanted to regain custody of and support her son, who was in her mother's care. After her counsel's argument, Ms. Keller declined the opportunity to make a statement to the court.

At the conclusion of the hearing, the district court stated it was not going to follow the probation officer's recommendation, explaining:

I hear this so often from people that have children come in and say they want to be back with their children and provide them support. That's just not true. Whenever you wanted to do something else, you did it, and you've been gaming this system for a long time, and I'm not going along with that. The supervised release has been a complete failure, and you've been given more and more

opportunities.

I find that these are Grade C violations and your Criminal History Category is II, which results in a recommended sentence of four to ten months under the policy statements issued by the sentencing commission. I've reviewed these reports, and I do not concur with that. There have been repeated violations and a complete lack of interest in trying to comply with the conditions of probation.

Based on that finding that the defendant has violated the conditions of supervised release as alleged in the probation officer's [report], it is ordered and adjudged that the defendant's supervised release is revoked and the defendant is sentenced to two years imprisonment. ... There will be no supervised release following service of sentence.

R., Vol. 2 at 14-15. Thereafter, the district court entered a formal judgment and commitment order on revocation of supervised release, recounting Ms. Keller's violations of supervised release and sentencing her to twenty-four months imprisonment and no supervised release.

## II. Discussion

On appeal, Ms. Keller contends the district court abused its discretion in imposing a variant sentence above the Guidelines range of four to ten months imprisonment by imposing a twenty-four-month sentence. She argues such a sentence is substantively unreasonable as evidenced by the fact it is twice the length of her original sentence and twice the length of the applicable Guidelines range. She suggests the district court imposed the maximum sentence for three

-8-

manifestly unreasonable criteria because it: (1) found her desire to be with her son insincere; (2) thought she was "gaming the system"; and (3) concluded her supervised release to be a complete failure. She also intimates a twenty-four-month sentence is unreasonable considering the fact she had almost completed her three years of supervised release under close supervision of the probation office. The government opposes the appeal.

In reviewing a sentence imposed after revocation of supervised release, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Tsosie*, 376 F.3d 1210, 1217-18 (10th Cir. 2004). We will not reverse a sentence following revocation of supervised release if the record establishes the sentence is "reasoned and reasonable." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005). As to the principle involving revocation of supervised release and resentencing, we have held "[i]t is well-settled that supervised release is part of the penalty for the initial offense." *See United States v. Cordova*, 461 F.3d 1184, 1186 (10th Cir. 2006) (internal quotation marks omitted). When supervised release is revoked and a sentence imposed, the court is "merely requiring the defendant to serve in prison all or part of the term of supervised release." *Tsosie*, 376 F.3d at 1216 (internal quotation marks omitted).

Thus, under the Federal Rules of Criminal Procedure and 18 U.S.C. § 3583, when a person violates the conditions of supervised release, the district court may modify the conditions of release or revoke the term of supervised release and impose prison time. *See United States v. Kelley*, 359 F.3d 1302, 1304 (10th Cir. 2004); 18 U.S.C. § 3583(e)(2) and (3); Fed. R. Crim. P. 32.1(b); U.S.S.G. § 7B1.3. In imposing a sentence following revocation of supervised release, the district court is required to consider both the Guidelines Chapter Seven policy statements as well as the factors provided in 18 U.S.C. § 3553(a). *See Cordova*, 461 F.3d at 1188. The Chapter Seven policy statements apply to violations of probation and supervised release and include advisory guideline ranges for sentences following revocation of supervised release. *See generally* U.S.S.G. Ch. 7 *and* §§ 7B1.3 and 7B1.4.

> The 18 U.S.C. § 3553(a) sentencing factors include:
>
> The nature and circumstances of the offense; *the history and characteristics of the defendant*; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution.

*Cordova,* 461 F.3d at 1188-89 (quoting *Contreras-Martinez*, 409 F.3d at 1242 n.3) (emphasis added). "The sentencing court ... is not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic

words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." *Id.* at 1189 (internal quotation marks omitted). Instead, the district court must "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), and satisfy us that it "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Finally, under § 3553(a), a defendant's history and characteristics are included in the list of sentencing factors considered in revocation proceedings, so that "[t]he very language of the statute instructs the sentencing court to consider the defendant's 'history and characteristics.'" *United States v. Hahn*, 551 F.3d 977, 985 (10th Cir. 2008) (quoting 18 U.S.C. § 3553(a)(1)), *cert. denied,* 129 S. Ct. 1687 (2009).

In this case, Ms. Keller did not object to revocation of her supervised release or the facts presented in the "Supervised Release Violation Report" on which the district court relied in imposing her sentence. In that report, the probation officer recounted that during her three years of supervised release, Ms. Keller: (1) tested positive three times for cocaine or marijuana, (2) had eight unexcused absences from the substance abuse program; (3) did not complete her third round of substance abuse treatment because it was terminated due to her own actions; and (4) was arrested and charged twice for driving under the

-11-

influence and for a felony offense involving second-degree aggravated motor vehicle theft, obstructing a peace officer, and resisting arrest. In recounting these circumstances, the probation officer noted Ms. Keller's disregard for the law and lack of responsibility and the need to impress upon her the seriousness of supervision and the negative impact of drug use.

It is evident the district court relied on these circumstances in departing upward from the imprisonment range set out in Chapter Seven, noting Ms. Keller's "repeated violations" and "complete lack of interest in trying to comply with the conditions of probation," despite the many "opportunities" afforded her. R., Vol. 2 at 15. In considering her history and characteristics, it not only considered this cumulative conduct of non-compliance with the terms of her supervised release but the fact that she had been given opportunities each time she tested positive for an illegal substance to enter substance abuse treatment and continue her supervised release. In other words, rather than have revocation proceedings brought against her the three times she tested positive, she was given opportunities to correct her problems and remain on supervised release. The district court also considered and rejected the probation officer's and her argument she deserved a sentence of time served based on her steady employment and completion of her training program. Instead, it determined her ongoing disregard of the law during her supervised release, as evidenced by her multiple

-12-

violations and failure to take advantage of the opportunities afforded her, warranted an upward variant sentence, despite her continued employment and training.

As Ms. Keller contends, on considering her violations and failure to take advantage of the opportunities afforded her, the district court found her expressed desire to be with her son insincere, she had been "gaming" the system, and her supervised release to be a complete failure. However, because the district court presided over Ms. Keller's revocation, it was in a better position than us to assess her sincerity and the extent and description of her abuse of supervised release. Moreover, the terms it chose to describe her abuse, inappropriate or not, do not change the fact that she continued to repeatedly violate the terms of her supervised release, even after being afforded opportunities to correct her problems and proceed on supervised release.

While Ms. Keller argues her sentence is substantively unreasonable because it is twice the length of her original sentence and twice the length of the applicable Guidelines range, we note the district court rejected the probation officer's recommended sentence of time served, as well as the advisory Guidelines sentence of four to ten months imprisonment, as not adequately reflecting her multiple infractions. Furthermore, the variant sentence it imposed

did not exceed the maximum sentence of two years allowed by law  *See* 18 U.S.C. § 3583(e).

In addition, Ms. Keller's argument her sentence is unreasonable because she almost completed her three years of supervised release ignores the fact that the conditions of supervised release applied to all three years, and most of her violations occurred during the last six months of her supervised release, including testing positive for marijuana, allegedly driving under the influence on two occasions, allegedly participating in felony auto theft, and missing eight of her substance abuse treatment sessions. While, commendably, she started her supervised release by completing substance abuse treatment, obtaining employment, and receiving technical training, she nevertheless repeatedly failed to comply with the conditions of her supervised release, especially toward the end of the time imposed. Thus, a review of the record leaves us satisfied the district court considered the parties' arguments, had a reasoned basis for revoking her supervised release, and imposed a sentence which did not exceed the maximum allowable sentence. For the reasons discussed, we conclude the district court imposed a reasoned and reasonable sentence that does not warrant reversal on appeal.

III.  Conclusion

Accordingly, we **AFFIRM** Ms. Keller's twenty-four-month term of imprisonment following revocation of her supervised release.

                    **Entered by the Court:**

                    **WADE BRORBY**
                    United States Circuit Judge